# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES,
*Plaintiff*,

v.

ARTHUR STANLEY,
*Defendant.*

No. 3:23-cr-0027-2 (VAB)

## RULING AND ORDER ON PRETRIAL MOTIONS

Arthur Stanley ("Defendant" or "Mr. Stanley") has been charged with kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and (2) ("Count One"), and causing death through use of a firearm, in violation of 18 U.S.C. §§ 924(j)(1) and (2) ("Count Two"). Indictment, ECF No. 1 (Feb. 14, 2023) ("Indictment").

Mr. Stanley has moved for the production of certain evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Jencks v. United States*, 353 U.S. 657 (1957). Mot. for Produc., ECF No. 172 (June 9, 2025) ("MFP").

He has also filed fifteen motions *in limine* to preclude the Government from introducing certain evidence at trial. Renewed Mots. *in Limine*, ECF No. 195 (June 30, 2025) ("MIL").

The Government has objected to Mr. Stanley's motion for production, Opp. to MFP, ECF No. 205 (July 11, 2025) ("Opp. MFP"), and all motions *in limine*, Opp. to MIL, ECF No. 206 (July 11, 2025) ("Opp. MIL").

For the following reasons, Mr. Stanley's motion for production is **DENIED** and his motions *in limine* are **GRANTED in part** and **DENIED in part**.

Mr. Stanley's motion *in limine* to preclude one 911 call is **DENIED** as moot.

Mr. Stanley's motion *in limine* to preclude certain photographs in GX 6 is **DENIED**, without prejudice to renewal at trial.

1

Mr. Stanley's motion *in limine* to preclude certain crime scene and autopsy photos from GX 4 and GX 5 is **DENIED**, without prejudice to renewal at trial.

Mr. Stanely's motion *in limine* to preclude Lt. Bowsza from testifying about the directional pattern of blood on Mr. Velez's face is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude Dr. Evangelista from using certain language to describe Mr. Velez's injuries is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to exclude certain portions of GX 13 is **DENIED** as moot.

Mr. Stanley's motion to exclude certain photographs from GX 9 is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude certain testimony from SA James is **GRANTED in part** as to testimony about a "cluster" or "link" of unsolved homicides and **DENIED in part**, without prejudice to renewal at trial, as to testimony without a proper foundation.

Mr. Stanley's motion *in limine* regarding the Taco Bell surveillance videos is **DENIED** without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude Y.C. from testifying as to the contents of any calls is **GRANTED in** part, as to the contents of calls with Mr. Scott, and **DENIED in part**, without prejudice to renewal at trial, as to the contents of calls with Mr. Velez.

Mr. Stanley's motion *in limine* to preclude T.W. from testifying as to his presence as the Stowe Village Mini Mart is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude evidence of connections between the firearm used to kill Mr. Velez and a firearm used in other shootings is **DENIED** as moot.

Mr. Stanley's motion *in limine* to preclude evidence of gang affiliation is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude introduction of Mr. Stanley's felony conviction and current life sentence is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude statements from T.W. as inadmissible hearsay is **DENIED** as moot.

Mr. Stanley's motion *in limine* to preclude evidence related to the death of Mr. Perry and Mr. Antoine is **DENIED**, without prejudice to renewal at trial.

## I.    BACKGROUND

### A.  Factual Allegations

Mr. Stanley and Mr. Melkuan Scott, who was tried separately, are alleged to have kidnapped and murdered Serafin Velez, during and in relation to a conspiracy to possess with intent to distribute marijuana. *See* Indictment.

### B.  Procedural History

On February 5, 2025, Mr. Stanley filed a motion to sever defendant and a memorandum in support. Mot. to Sever, ECF No. 47 (Feb. 2, 2025); Mem. in Supp., ECF No. 49 (Feb. 2, 2025).

On February 28, 2025, the Government filed a memorandum in opposition to the motion to sever. Mem. in Opp., ECF No. 61 (Feb. 28, 2025).

On March 14, 2025, Mr. Stanley filed a reply to the Government's memorandum in opposition to the motion to sever. Response/Reply, ECF No. 65 (Mar. 14, 2025).

On March 28, 2025, Mr. Stanley filed six motions *in limine*. Mot. *in Limine*, ECF No. 77 (Mar. 28, 2025) ("Stanley March MIL").

On April 8, 2025, Mr. Scott filed two motions *in limine* and an accompanying memorandum in support. Mot. in *Limine*, ECF No. 80 (Apr. 8, 2025); Memo. in Supp., ECF No. 81 (Apr. 8, 2025) ("Scott MIL").

On April 16, 2025, the Court held a hearing on the motion to sever. Min. Entry, ECF No. 88 (Apr. 16, 2025).

On April 18, 2025, the Government filed an omnibus memorandum in opposition to both Mr. Scott's and Mr. Stanley's motions *in limine*. Mem. in Opp., ECF No. 89 (Apr. 18, 2025) ("Omnibus Opp. to MILs"). The memorandum included a motion to make opening statements. *Id.*

On April 25, 2025, both Mr. Scott and Mr. Stanley filed replies to the memorandum in opposition. Reply to Response by Melkuan Scott, ECF No. 95 (Apr. 25, 2025); Response/Reply by Arthur Stanley, ECF No. 96 (Apr. 25, 2025).

On April 29, 2025, the Court granted Mr. Stanley's motion to sever and denied without prejudice to renewal at trial Mr. Stanley's motions *in limine*. *United States v. Stanley*, No. 23-cr-27 (VAB), 2025 WL 1233925, at *1 (D. Conn. April 29, 2025).

On May 28, 2025, a jury of twelve found Mr. Scott guilty on both counts. Jury Verdict, ECF No. 154 (May 28, 2025).

On June 9, 2025, Mr. Stanley filed his motion for production of materials under *Brady* and *Jencks*. MFP.

On June 30, 2025, Mr. Stanley renewed his motions *in limine*. MIL.

On July 11, 2025, the Government filed its opposition to Mr. Stanley's motion for production, Opp. MFP, and its opposition to Mr. Stanley's renewed motions *in limine*. Opp. MIL.

4

On July 18, 2025, Mr. Stanely filed a Response/Reply to the Government's Memorandum in Opposition to Motion for Production. Resp./Reply Mot. for Prod., ECF No. 216 (July 18, 2025) ("Reply MFP").

On July 25, 2025, Mr. Stanley filed Reply Memorandum in Further Support of the Renewed Motions *in Limine*. Reply Mem., ECF No. 233 (July 25, 2025) ("Reply MIL"). Mr. Stanley also filed a Notice of Supplemental Update to the Motion for Production. Supp. Not. MFP, ECF No. 230 (July 25, 2025) ("Supp. MFP").

## II.    STANDARD OF REVIEW

### A.  Motion for Production

The Supreme Court's decisions in *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny, including *Giglio v. United States,* 405 U.S. 150 (1972), require that:

> To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant.... Information coming within the scope of this principle ... includes not only evidence that is exculpatory, *i.e.,* going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, *i.e.,* having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.

*United States v. Calhelha*, 456 F. Supp. 2d 350, 367 (D. Conn. 2006) (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (internal citations omitted)). Accordingly, "[d]ocuments that the Government has reviewed or has access to must be provided to aid a defendant in preparing his defense." *United States v. Giffen*, 379 F. Supp. 2d, 337, 343 (S.D.N.Y. 2004). The Government need not, however, "produce documents from agencies that did not participate in the investigation of the defendant or documents of which it is unaware." *Id.* (citing *Avellino*, 136 F.3d at 255); *see also Calhelha*, 456 F. Supp. 2d at 367 (citing the same).

Under the Jencks Act, 18 U.S.C. § 3500, the court shall, "[a]fter a witness called by the United States has testified on direct examination, [and] on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." *Id.*; *see also* Fed. R. Crim. P. 26.2 (procedure for producing a witness statement); *United States v. Gonzalez*, No. 3:20-MJ-00347 (SALM), 2020 WL 3868788, at *2 (D. Conn. July 9, 2020) (Federal Rule of Criminal Procedure 26.2 effectively incorporates the Jencks Act into the criminal rules). The statute defines a "statement" as "(1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." *Calhelha*, 456 F. Supp. 2d at 368 (citing 18 U.S.C. § 3500(e)). The statute, however, limits the production of such "until [the Government] witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); *see also United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974) ("[T]he government cannot be compelled to disclose statements of prospective witnesses prior to the time prescribed by the Jencks Act."); *Calhelha*, 456 F. Supp. 2d at 368 (noting that "§ 3500(a) limits production to the time period *after* a covered witness testifies").

### B.  Motions *in Limine*

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

## III.    DISCUSSION

### A.  The Motion for Production

Mr. Stanley has moved for production of recorded statements, drafts of statements, notes, and communications related to N.N., or, in the alternative, to schedule an evidentiary hearing at which Detective Dennis DeMatteo of the Hartford Police Department ("HPD") would be called to testify. MFP at 1. Detective DeMatteo interviewed N.N. on February 21, 2018, after he claimed to have information about a homicide. *Id.* at 9. Detective DeMatteo had been involved with the investigation into Mr. Velez's death since February 2012. *See id.* 6–9. Mr. Stanley argues that, despite the Government's protests to the contrary, there are recordings of Detective DeMatteo's interview with N.N. or at least further documentation of it, and that the Government

is required to disclose such material under *Brady* and the Jencks Act. *See id.* at 23–24. In the alternative, Mr. Stanley moves to order the production of Detective DeMatteo for an evidentiary hearing to discuss the February 2018 interrogation. *Id.* at 25.

The Government argues that it has already satisfied its discovery obligations under *Brady*, *Giglio*, and the Jencks Act by "turning over all materials in its possession in the form of notes, written statements, transcripts, criminal history, and arrest reports of N.N." Opp. MFP at 1. The Government has said it will continue to seek out any additional materials and comply with all its discovery requests obligations. *Id.* (citing *Brady*, 373 U.S. 83 (1963), *Jencks v. United States*, 353 U.S. 657 (1957), and *Giglio v. United States*, 405 U.S. 150 (1972)). The Government argues there is no legal basis for granting Mr. Stanley's request.

The Court agrees.

The Government has represented that it has made the requested pretrial disclosures and will continue to do so, consistent with its obligations under *Brady* and *Giglio*. *See* Opp. MFP at 3. "[D]istrict courts in this circuit routinely accept [this] type of representation that the Government has made concerning *Brady* [and *Giglio*] material." *Calhelha*, 456 F. Supp. 2d at 369 (quoting *United States v. Savarese*, No. 01-CR-1121 (AGS), 2002 WL 265153, at *2 (S.D.N.Y. Feb. 22, 2002)). The Court therefore cannot find that additional disclosure is required under this authority. Indeed, "defendants' request for such information amounts to no more than 'mere speculation' that the Government has not provided everything that it is obligated to disclose. . . [and] is insufficient to justify any order of additional disclosure or discovery." *Id.* (citing *United States v. Navarro,* 737 F.2d 625, 631 (7th Cir.1984); *United States v. Milikowsky,* 896 F. Supp. 1285, 1309 (D.Conn.1994), *aff'd* 65 F.3d 4 (2d Cir.1995)). Here, Defendant's brief is "mere speculation" either that the Government has failed to disclose information or that HPD

is withholding information. That is insufficient to "justify any order of additional disclosure or discovery." *Id.*

Regarding any Jencks Act material, the Government has represented in good faith that it fulfilled its obligations under the Jencks Act. Opp. MFP at 1, 3. "The Government cannot be required to do more." *United States v. Carpenter*, No. 3:13-CR-226 (RNC), 2015 WL 9480449, at *3 (D. Conn. Dec. 29, 2015) (citing *United States v. Ordaz-Gallardo*, 520 F. Supp. 2d 516, 523 (S.D.N.Y. 2007)).

Accordingly, Mr. Stanley's motion to order production will be denied.

To the extent Mr. Stanley believes that Detective DeMatteo's testimony is necessary for the jury, he may call Detective DeMatteo as a witness at trial.

### B. The Motions *in Limine*

Mr. Stanley seeks to preclude the Government from: (1) introducing the same 911 call that was excluded from Mr. Scott's trial, (2) introducing two photographs of the Stowe Village Mini Mart in GX 6, (3) introducing cumulative autopsy and crime scene photos, (4) introducing testimony from Lieutenant Bowsza about the possible reasons for the directional pattern of blood flow on Mr. Velez's face, (5) introducing testimony from Dr. Evangelista that includes a comparison between the victim's injured skull and "smashing an egg in a paper bag," (6), introducing parts of GX 13, (7) introducing photographs in GX 9A–9H that appear to be mugshots, (8) introducing certain testimony from FBI Special Agent Ryan James, (9) introducing testimony from Y.C. about what he heard on telephone calls during the events leading up to Mr. Velez's murder, (10) introducing testimony from T.W. about Mr. Stanley's presence at the Stowe Village Mini Mart, (11) introducing testimony from FBI witnesses drawing connections between the firearm used to kill Mr. Velez and the firearms used in other shootings, (12)

introducing evidence about Mr. Stanley's alleged membership in the "West Hell" gang, (13)

introducing evidence of Mr. Stanley's prior federal conviction and his current life sentence, (14)

introducing hearsay evidence from T.W., and (15) introducing evidence regarding the killings of

Mr. Perry and Mr. Antoine.

The Court considers each motion in turn.

### 1. The One 911 Call

On May 12, 2025, Mr. Scott filed a motion *in limine* to preclude the government from

offering audio from two 911 calls reporting a body in North Hartford that would turn out to be

the body of Mr. Velez. *See Melkuan Scott Motion in Limine*, ECF No. 110 (May 12, 2025)

("Scott 911 MIL"); *Melkuan Scott Mot. in Limine*, ECF No. 111 (May 12, 2025) ("Mem. Scott

911 MIL"). During a hearing before Mr. Scott's trial, the Court ruled that only one of the two

911 calls submitted by the Government for introduction could be admitted. Scott Trial Tr. at 6–7,

ECF No. 200 (May 15, 2025) ("May 15, 2025 Tr."). The Court ruled that one of the calls, in

which the caller was considerably more excited than the other and offered opinions on topics

beyond the scope of the charged conduct, risked running afoul of Rule 403. *Id.* The Court said:

> On the 911 calls it is my understanding there are two calls. . . . . The
> first phone call there is a gentleman that, you know, clearly certainly
> falls within the context of providing some sense of an excited
> utterance and makes a range of comments, and the second is from
> an individual that basically states what happened, what they saw,
> and reports the incident to 911. . . . It seems to me that I understand,
> certainly, in addition to the 911 calls generally being admissible, and
> certainly some of the statements within the 911 calls certainly falling
> within the context of present sense impression or an excited
> utterance, it does seem to me though, in addition to those exceptions,
> some of the specific comments that are made by this individual seem
> to go beyond that which, you know, making comments about the
> general state of things and so forth. There is a part of me that
> wonders, why do you need that when you have the second call? I
> mean, it seems to me that there is a 403 issue with some of the

> content of his statements beyond the fact that they are an excited
> utterance that don't appear to me to have much probative value[.]

*Id.* Mr. Stanley has now moved for the Court to apply the same ruling here. MIL at 7–8.

The Government does not intend to offer the call that was previously excluded. Opp. MIL at 3. The Government notes, however, that it "continues to believe that both calls should properly have been admitted," as they were both, "highly relevant, and there would be no 'unfair prejudice' from their admission." *Id.*

The Court's ruling has not changed. The 911 call admitted during Mr. Scott's trial is sufficient for the Government's evidentiary purposes, while the second call, which the Court excluded, does not add information and its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

Accordingly, the motion *in limine* to preclude one 911 call will be denied as moot.

### 2.  The Second and Third Photographs of Government Exhibit ("GX") 6

Mr. Stanley seeks to preclude two photographs offered by the Government as Exhibit 6 during Mr. Scott's trial. MIL at 8. The pictures depict the Stowe Village Mini Mart, and Mr. Stanley argues that the photos "zoom in on a portion of the floor which appears to contain splattered blood droplets." *Id.* Mr. Stanley points out that, while the Government introduced the photos at Mr. Scott's trial, it did not assert that the apparent blood droplets were in any way related to Mr. Velez's death. *Id.*

Mr. Stanley argues that these photos are not a "fair and accurate depiction[]" of the crime scene as it existed at the time of alleged events, so the Court may exercise its discretion to exclude the photos. *Id.* (citing *United States v. Diaz*, 176 F.3d 52, 82 (2d Cir. 1999)). He further argues that the photos with apparent blood droplets are no more probative than the other photos in GX 6 for purposes of depicting the layout of the store. *Id.*

The Government opposes the motion, and argues, first, that the photographs are not "zoomed in" on a portion of the floor showing red droplets. Opp. MIL at 3. Instead, the Government argues that the second and third photographs depict "coolers, sparsely stocked with beverages, and, ... the back of the store showing a maintenance room and a hallway that leads to the back parking lot." *Id.* Second, while there are red dots on the floor, those dots could also be "paint, a spilled drink, or any number of things." *Id.* at 4. Third, the Government argues that it made clear during testimony offered at the Scott trial that the pictures were not from the night of the homicide, nor did they assert that the red dots on the floor were blood. *Id.* The Government argues that the pictures are relevant to confirm the layout of the store, which is not depicted in other photographs, and "there is no reason to believe the jury would engage in" speculation regarding the origin of the red dots. *Id.*

The Court agrees.

Government Exhibit 6 was admitted during Mr. Scott's trial without objection. Scott Trial Tr. May 20, 2025 at 26, ECF No. 142 (May 20, 2025) ("May 20, 2025 Tr."). During the Government's questioning of its witness using the second and third photographs, the Government did not call attention to the red dots on the floor, but rather asked questions consistent with the purpose of confirming the layout of the store. *See id.* at 27. Without more, the Court sees nothing prejudicial about offering photographs of drink coolers and a path to the back door at the Stowe Village Mini Mart, and the photographs are probative of the alleged crime scene's layout.

Accordingly, Mr. Stanley's motion *in limine* to exclude certain photographs in GX 6 will be denied without prejudice to renewal at trial.

### 3.  The Autopsy and Crime Scene Photographs from GX 4 and GX 5

Mr. Stanley seeks to exclude a series of photos of the crime scene and Mr. Velez's autopsy, offered during Mr. Scott's trial as GX 4 and GX 5, respectively. MIL at 9. Mr. Scott offered a motion *in limine* to preclude some of the same photographs, arguing that they were cumulative and unduly prejudicial. Melkuan Scott Mot. *in Limine*, ECF No. 106 (May 11, 2025) ("Scott Photos MIL"). Mr. Stanley points out that, during Mr. Scott's pretrial conference, the Court cautioned the government that there were "more photos than appears to be necessary . . . . At some point it seems to me it is going to get cumulative." May 15, 2025 Tr. at 5. The Court noted that, should the Government seek to introduce all of the photographs and the Defense object, the Court would likely sustain some of the objections. *Id.* at 6.

The Government argues that each photograph is probative and not cumulative. Opp. MIL at 4–5. It further argues that crime scene and autopsy photos are not inadmissible merely because they have a tendency to "upset or disturb a trier of fact," *id.* 5–6 (citing *United States v. Salameh*, 152 F.3d 88, 123 (2d Cir. 1998)), and "crime scene photographs are routinely admitted into evidence," *id.* (citing *United States v. Saipov*, No. 17-CR-722 (VSB), 2023 WL 4199415, at *6 (S.D.N.Y. June 27, 2023)). The Government notes that it intends to introduce a subset of crime scene and autopsy photographs pared down from those it proposed to introduce at the Scott trial, and that it intends to omit "some of the most gruesome pictures" from its exhibits. *Id.* at 6. The Government argues that, therefore, exclusion is not necessary and that the photographs it intends to introduce from the crime scene and Mr. Velez's autopsy are more probative than prejudicial.

The Court agrees, at least for now.

As it did during the Scott trial, the Court cautions the Government that the Court may sustain objections from defense counsel to the introduction of photos, if the photographs become cumulative or their probative value is substantially outweighed by their risk of undue prejudice.

*See* Fed. R. Evid. 403. It advises the Government not to introduce photographs beyond those that were introduced during Mr. Scott's trial.

Accordingly, Mr. Stanley's motion *in limine* to preclude the Government from introducing certain crime scene and autopsy photos will be denied without prejudice to renewal at trial.

### 4. Lieutenant Bowza Testimony on Scientific or Medical Reasons for the Directional Pattern of Blood Flow

Under Rule 701 of the Federal Rules of Evidence, a lay witness may only offer an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The rational-basis requirement "is the familiar requirement of first-hand knowledge or observation." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) (citations omitted). The helpfulness requirement is principally "designed to provide assurance[ ] against the admission of opinions which would merely tell the jury what result to reach." *Id.* The "not based on specialized knowledge" requirement states that "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). The proponent of lay opinion testimony must satisfy the rule's three foundation requirements. *See United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004).

In addition, all testimony "is subject to the general balancing rule of [Federal Rule of Evidence] 403, which provides that 'evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

cumulative evidence.'" *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (quoting Fed. R. Evid. 403).

Mr. Stanley seeks to preclude HPD Lieutenant Brian Bowsza from testifying on expert matters, specifically the reasons for the directional pattern of blood flow on Mr. Velez's face when law enforcement officers found him at the crime scene. MIL at 9. During Mr. Scott's trial, the Government called Lt. Bowsza as a lay witness to testify regarding the facts of his investigation into Mr. Velez's murder. *Id.* The Government ask, "[d]id anything stand out to you about the gunshot wounds to the face area that you mentioned?" Scott Trial Tr. May 19, 2025, ECF No. 133 (May 20, 2025) ("May 19, 2025 Tr."). Lt. Bowsza responded, "The blood was moving in a kind of a, more or less, straight path as gravity would draw a liquid . . . which told that – my belief was that he was not moving at the time he was shot and that he was likely laying down at the time he was shot, because that is where the blood was being pulled." *Id.* at 59.

Mr. Stanley argues that Lt. Bowsza should be precluded for offering such an opinion because it is more akin to the "specialized" knowledge prohibited under Rule 701. He argues that Lt. Bowsza may testify to his personal observations as to what direction the blood was moving but not as to the manner of how Mr. Velez was shot or his cause of death. MIL at 10.

The Government responds that it has not noticed Lt. Bowsza as an expert in this case and does not intend to elicit any "scientific or medical" testimony from him. Opp. MIL at 6. Instead, it intends his testimony to "cover his training and experience as a law enforcement officer, including his training and experience working as a crime scene investigator, the steps which are generally taken to process a crime scene, the specific steps taken to process the crime scene where Serafin Velez['s] body was located[,] and his own observations." *Id.* at 6–7. The Government does not intend to ask him about Mr. Velez's cause of death and argues that it did

15

not ask him to render such an opinion during the Scott trial. *Id.* at 7. The Government argues

that, should Lt. Bowsza offer the same observation regarding the direction of the flow of blood

of Mr. Velez's face and his conclusions as to the implications of the blood flow for the manner

of how Mr. Velez was shot, such observations and conclusions would be based on his

"observations and the reasonable conclusions that he drew based on his perception," *id.* at 8,

rather than any impermissible specialized scientific or medical qualifications. *Id.* The

Government argues that that particular testimony is admissible as derived from Lt. Bowsza's

observation and his own common sense because "[t]he concept of gravity, at least in its most

basis function, is not something that requires specialized knowledge. His opinion was based on

his own observations as a crime scene detective and his own common sense." *Id.*

The Court agrees, for now.

Observations rationally based on a witness's perception and bolstered by a witness's

professional experience are admissible under Rule 701. *See United States v. Dawkins*, 999 F.3d

767, 793 (2d Cir. 2007) ("The district court did not abuse its discretion in permitting Blazer and

Sood to testify regarding their understanding of conversations with Dawkins and Code. Blazer's

and Sood's testimony was 'rationally based on [their] perception[s].' They were participants in

these conversations and therefore possessed the required first-hand knowledge of their context—

knowledge that would not have been readily available to jurors on their own. As the district court

noted, the conversations included jargon that was 'not so well known to folks outside of that

industry,' an industry in which Blazer had worked for over a decade, and therefore the testimony

was 'helpful to clearly understanding' the often-confusing recorded conversations." (citations

omitted)).

Lt. Bowsza's observations and conclusions about the directional flow of blood on Mr. Velez's face fit squarely within the requirements of Rule 701. They were based on his first-hand perception viewing Mr. Velez; are helpful for clearly understanding how certain bullets entered Mr. Velez's body; and are based his experience as a crime scene detective combined with common sense. While the meaning of the direction of blood flow might not have been "readily available to jurors" without Lt. Bowsza's experience, *see id.*, it would not require specialized knowledge for a juror to reach the same conclusions as Lt. Bowsza by observing the photographs capturing the direction of blood flow.

Accordingly, Mr. Stanely's motion to preclude Lt. Bowsza from testifying about the directional pattern of blood on Mr. Velez's face will be denied without prejudice to renewal at trial.

### 5. Doctor Evangelista's Comparisons Regarding How a Bullet Impacts a Human Skull

During Mr. Scott's trial, Dr. Frank Evangelista, an Associate Medical Examiner for the State of Connecticut, May 20, 2025 Tr. at 123, described injuries to Mr. Velez's skull as follows, "I always sort of say imagine putting an egg into a bag, and the egg is shattered, and that is what this guy's skull looked like inside."  Mr. Stanley argues that a similar statement should be precluded at his trial under Rule 403, as there are alternative descriptors available that are equally probative but less prejudicial. MIL at 10 (citing *Old Chief v. United States*, 519 U.S. 172, 184 (1997)). Mr. Stanley argues that Dr. Evangelista's "shattering egg" illustration is not more probative than his previous observations that the "damage to the skull" consisted of "multiple fractures," May 20, 2025 Tr. at 123, 142–43, but could be prejudicial due to its graphic nature. MIL at 11–12.

The Government argues that it cannot control or script a witness's response to questions, and that it has no way of knowing whether Dr. Evangelista will use the same metaphor to explain the findings in his autopsy report. Opp. MIL at 9. The Government argues that, regardless, that specific analogy does not create the danger of undue prejudice. *Id.*

The Court agrees.

The exact language used by Dr. Evangelista during the Scott trial without further context does not present the risk of undue prejudice that substantially outweighs the probative value it offers jurors by drawing a verbal picture of Mr. Velez's injuries.

Accordingly, the Court will deny Mr. Stanley's motion without prejudice to renewal at trial.

The Court may reconsider the issue of illustrative metaphors to describe Mr. Velez's injuries, depending on the context of the trial. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.") (internal citation omitted).

### 6. The Portions of GX 13

Before his trial, Mr. Scott sought to exclude portions of a law enforcement report offered as GX 13 entitled, "FBI Cellular Analysis Survey." Melkuan Scott Mot. *in Limine*, ECF No. 109 (May 12, 2025). The Court granted the motion in part and denied it in part. *See* May 15, 2025 Tr. at 9–11, and Mr. Stanley now adopts the motion in full. MIL at 12. He requests that the Court exclude from the report: "(1) two illustrated FBI shields on the cover page containing the words, 'Fidelity, Bravery, Integrity'; (2) a label titled, 'FBI Cellular Analysis Survey Team' on the cover page; (3) smaller images of the two FBI shields on subsequent pages; (4) the statement on the bottom of each page reading 'Property of the FBI'; (5) the first paragraph titled,

'Background'; (6) a reference to 'Scott residence'; and (7) the names Melkuan Scott, Yuriel Cepeda, Serafin Velez, and Melvin Perry throughout as opposed to referencing phone numbers." *Id.*

The Government argues that it made the changes requested by the Court to GX 13 before the exhibit was admitted during Mr. Scott's trial. Opp. MIL at 9. That altered exhibit excluded (1) two illustrated FBI shields on the cover page containing the words, "Fidelity, Bravery, Integrity"; (2) smaller images of the two FBI shields on subsequent pages; (3) the statement on the bottom of each page reading "Property of the FBI"; and (4) the summary page initially proposed by the Government. *See* May 15, 2025 Tr. at 8–10. The Government argues that, since it plans to introduce the same altered version of GX 13 at Mr. Stanley's trial, the issue is moot. Opp. MIL at 9.

The Court agrees.

The version of GX 13 introduced at Mr. Scott's trial, pares down the report to its most probative content, eliminating extraneous signifiers that the report came from the FBI. *See* May 15, 2025 Tr. at 8–10. ("The jury just needs the content of the report.").

Accordingly, Mr. Stanley's motion *in limine* to exclude certain portions of GX 13 will be denied as moot.

### 7.  The Photographs in GX 9A-9H

Mr. Stanley seeks to exclude photographs introduced at Mr. Scott's trial as GX 9A-9H—which were used to identify Serafina Velez, Frank Chaney, Walter Chaney, Melvin Perry, Melkuan Scott, Arthur Stanley, Jeff Antoine, and Anthony Harris—because the photos appear to be from booking photos (*i.e.*, "mug shots,") taken at the time of an arrest in a criminal case. MIL at 12. Mr. Stanley cites numerous cases from this Circuit in which courts found that the

prejudicial nature of mug shots substantially outweighed their potential probative value. *Id.* at 13 (collecting cases).

The Government argues that the photographs are "headshots of a number of individuals whose names will be mentioned at trial and who were involved in some way, either as witnesses or participants, in the charged criminal conduct." Opp. MIL at 10. It argues that the photographs are highly probative given the number of individuals involved in the charged conduct and the danger of confusing the jury should witnesses identify the individuals by name or nickname alone. Furthermore, the Government argues that this high probative value is not outweighed by the danger of unfair prejudice because, while the photos "resemble mugshots," they do not have identifiers that clearly indicate they are mugshots, such as prisoner identification numbers or references to the department of corrections. *Id.* 10–11 (citing *Tirado v. Shutt*, No. 13-cv-2848 (LTS)(AJP) 2015 WL 6866265, at *7–8 (S.D.N.Y. Nov. 9, 2015). It concludes that because the photographs are not clearly identified as mugshots and are highly probative, the motion should be denied. *Id.* at 11.

The Court agrees, in part.

"An assertion by the defense that 'the general orientation of [a] photo[ ] tends to resemble mugshots,'" without more, may not be sufficient to exclude otherwise highly probative evidence." *United States v. Patterson*, No. 3:21-cr-103 (VAB), 2023 WL 2011225, at *14 (D. Conn. Feb. 15, 2023). Mr. Stanely points out that in *Tirado v. Shutt*, a district court in this Circuit excluded photographs of a litigant that were "clearly mugshots" because their probative value did not outweigh the substantial risk of undue prejudice. No. 13CV2848–LTS–AJP, 2015 WL 6866265, *8 (S.D.N.Y. Nov. 9, 2015). In that case, however, the court found that the photographs were of such poor quality that they held minimal probative value for the purpose for

which they were offered: the jury evaluating plaintiff's claimed facial deformity. Furthermore, the photos at issue in that case included several mugshots of the same person over a period of time, pointing to an extensive criminal history. *Id.*

Here, the Government seeks to introduce photographs which will likely be identified by jurors as mugshots. But, given the need for the jury to identify multiple people to understand the charged conduct, on the whole, the probative value of the photographs outweighs any risk of unfair prejudice to Mr. Stanley.

Accordingly, Mr. Stanley's motion to exclude certain photographs from GX 9 will be denied without prejudice to renewal at trial.

### 8. The Testimony of FBI Special Agent ("Special Agent") Ryan James

#### a. Allusions to Other Homicides

During Mr. Scott's trial, the Government asked Special Agent James to describe his work investigating cold case homicides and he provided the following answer:

> [P]art of our tasking as the task force model was kind of looking at violent crime, which included homicides, and one of the things we noticed over a string of years is there was a variety of unsolved homicides that seemed to be linked together. So the purpose of the cold case group was to look at these cluster of unsolved homicides and see if there is any commonalities between the different incidents.

May 20, 2025 Tr. at 184. The Court sustained an objection to that answer from Mr. Scott's attorney and struck it from the record, noting that the trial concerned a single homicide and was not charged as a racketeering conspiracy. *Id.* at 185. Mr. Stanley moves to preclude Special Agent James from testifying about any "cluster of unsolved homicides," "unsolved homicides that seemed to be linked together," or linking this murder to any broader conspiracy. MIL at 13–14.

The Government assures the Court that it will be cognizant of avoiding questions that might imply Mr. Stanley was involved in the related homicides of Melvin Perry and Jeff Antoine. Opp. MIL at 11. But, the Government notes that this limitation should not preclude Special Agent James from explaining that his work included investigating violent crime and narcotics cases. *Id.* at 12; *see also* May 15, 2025 Tr. at 183–84.

The Court agrees, in part and disagrees in part.

As it did during the Scott trial, the Court would entertain objections to testimony implying Mr. Stanley's involvement in events beyond the scope of the charged conduct. *See* May 15, 2025 Tr. at 184–85. This should not prevent Special Agent James from describing the broad scope of his work at the Hartford Field Office. He may not testify, however, about criminal conduct not charged in this case.

### b. Matters Investigated by Hartford Police Department

Mr. Stanley also seeks to preclude Special Agent James from testifying on matters investigated by the Hartford Police Department, including by Detective DeMatteo. MIL at 14. Mr. Stanley argues that Special Agent James cannot establish a foundation for the information gained from the Hartford Police Department regarding Mr. Velez's murder. *Id.* 14–15.

The Government points out that defense counsel and the Government engaged in an extensive sidebar with the Court during Mr. Scott's trial regarding the laying a foundation Special Agent James's investigation and conclusions, during which the Government proffered the full scope of Special Agent James's testimony.[1] May 15, 2025 Tr. at 189–202. The Court was satisfied that the Government could adequately lay a foundation for Special Agent James's

---

[1] Mr. Stanley also argues that the Government "should not be permitted . . . to again forgo [Detective] DeMatteo's testimony and rely instead on SA James." MIL at 15. Again, Defense counsel may call Detective DeMatteo as a witness should they wish to question him.

testimony. *Id.* The Government argues that Mr. Stanley will have the opportunity to object during the trial if they believe Special Agent James's testimony lacks proper foundation. Opp. MIL at 12.

The Court agrees.

The foundation for Special Agent James's testimony, as presented during the Scott trial, adequately supported his testimony. Should Special Agent James's testimony in Mr. Stanley's trial go beyond his previous testimony, the Government would have to establish a proper foundation for that testimony, and Mr. Stanley could object if the Government failed to do so. It would be premature, however, for the Court to rule on such an objection before trial.

### c.  The Taco Bell Videos

Additionally, Mr. Stanley seeks to preclude Special Agent James from testifying about CCTV footage at Westfarms Mall, which depicts a meeting of the "drug deal's" investors at Taco Bell on the night of February 15, 2012. MIL at 15. Mr. Stanley argues that Special Agent James did not procure the surveillance video, Detective Matteo did, and that, furthermore the video is not especially probative since Mr. Stanley is not depicted in the video and "does not challenge the existence of an agreement between others to conduct a marijuana deal." *Id.* Mr. Stanley notes that he challenges his own knowing and willing participation in that deal. *Id.*

The Government responded that the parties had reached a stipulation to admit the surveillance video during the Scott trial and, at the time of filing its opposition memorandum, sought to reach a similar stipulation with Mr. Stanley's counsel. Opp. MIL at 12. The Government indicates that, should a stipulation not be reached, it will lay a proper foundation for the admission of the video. *Id.* 12–13.

Accordingly, the Court will grant Mr. Stanley's motion *in limine* to preclude Special Agent James testifying about a "cluster" or "link" of unsolved homicides, and deny without prejudice to renewal his motion to preclude Special Agent James from testifying without a proper foundation.

The Court will reserve final judgment on the motion *in limine* regarding the Taco Bell surveillance videos. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context." (internal quotation marks omitted)).

### 9. The Y.C. Testimony

Mr. Stanley seeks to preclude Y.C. from testifying about the contents of phone calls received from the drug deal's investors. MIL at 15. During Mr. Scott's trial, Y.C. testified that, after he and his associates left the Stowe Village Mini Mart—after having "ripped [] off" the deal's investors, May 22, 2025 Tr. at 23—they received several phone calls. *Id.* Y.C. was not able to identify the person on the other of the phone, and therefore the Court sustained an objection to Y.C.'s testifying about the contents of the call as inadmissible hearsay. *Id.* 23–24. Mr. Stanley now asks the Court to preclude Y.C. from testifying about any contents of calls that he received from unidentified persons. MIL at 16.

The Government objects to this motion. It argues that Y.C. overheard statements on the phone from Mr. Velez, whose statements are admissible because they qualify as excited utterances, as Mr. Velez had been kidnapped at gunpoint and forced to call Y.C. Opp. MIL at 13 (citing Fed. R. Evid. 803(2)). It also argues that Mr. Scott's statements are admissible statements of a co-conspirator and thus do not constitute hearsay. Opp. MIL at 14 (citing Fed. R. Evid. 801(d)(2)(E)).

The Court disagrees, in part.

Y.C. did not know Mr. Scott at the time of these events, and thus would be unable to lay a proper foundation to establish the contents of the calls as co-conspirator statements. *See* May 22, 2025 Tr. at 23–24. *Cf. United States v. Swinton*, No. 3:19-cr-65 (JAM), 2022 WL 3053767, *5 (Aug. 3, 2022) ("[T]he Second Circuit has continued to require some 'independent corroborating evidence' to support the conclusion that the offered statements were in fact made by a coconspirator during and in furtherance of a conspiracy." (citing *United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir. 1988)). If the Government is able to lay a foundation for Y.C. hearing Mr. Velez's statements, however, it is possible those statements would be admissible as excited utterances. Fed. R. Evid. 803(2) (defining "excited utterance" as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.").

Accordingly, the Court will grant Mr. Stanley's motion to preclude Y.C. from testifying as to the contents of any calls with Mr. Scott. The Court will deny without prejudice to renewal at trial, however, his motion to preclude Y.C. from testifying as to the contents of any calls with Mr. Velez.

### 10. T.W.'s Testimony Related to Mr. Stanley's Presence at the Stowe Village Mini Mart

Mr. Stanley seeks to preclude T.W. from testifying about Mr. Stanley's presence at the Stowe Village Mini Mart. MIL at 16. During Mr. Scott's Trial, T.W. testified that he had seen "Wig"—identified by his photograph—around the store and "around" Mr. Scott. MIL at 16–17 (citing May 21, 2025 Tr. at 75–76). Mr. Stanley argues that T.W.'s testimony lacked the proper foundation regarding his personal knowledge of Wig's presence. *Id.* at 17 (citing *United States v. Garcia*, 291 F.3d 127, 140–42 (2d Cir. 2002); *see also* Fed. R. Evid. 602 ("A witness may testify

to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

The Government argues that a sufficient foundation had been laid, in that T.W. indicated he was familiar with the store and had spent time there. Opp. MIL at 14. It also argues that an objection based on a lack of foundation to questions posed to a witness may be made at trial.

The Court agrees.

There is nothing in the record definitively demonstrating that the Government could not lay a proper foundation for T.W.'s knowledge regarding Mr. Stanley's presence at the Stowe Village Mini Mart.

Accordingly, the Court will deny Mr. Stanley's motion *in limine* to preclude T.W. from testifying as to his presence as the Stowe Village Mini Mart without prejudice to renewal at trial.

### 11. The Connections Between the Firearm Use to Kill Mr. Velez and Other Shootings.

Mr. Stanley seeks to preclude FBI witnesses from testifying that the firearm used to kill Mr. Velez was used in other shootings. Mr. Stanley points to grand jury testimony from January 2019 in which FBI Special Agent Lisa Tutty alluded to possible ballistics evidence recovered from other shootings that tied the firearm in those shootings to the firearm used to kill Mr. Valez. MIL at 18. Mr. Stanely argues that such evidence would be unduly prejudicial.

The Government stated that it has no intention of introducing such evidence. Opp. MIL at 15.

Accordingly, Mr. Stanley's motion *in limine* to preclude evidence of connections between the firearm used to kill Mr. Velez and a firearm used in other shootings will be denied as moot.

### 12.  Gang Affiliation

Federal Rule of Evidence 404(b) prohibits the admission of other crimes, wrongs or acts to "prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b)(1). Other crimes, wrongs, or acts may be admissible, however, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity absence of mistake, or lack of accident." *Id.* 404(b)(2). And evidence related to conduct that "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial" is not considered to be evidence of "other crimes, wrongs, or acts" subject to Rule 404(b). *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).

Under the Second Circuit's "inclusionary" approach, Rule 404(b) evidence may be admitted "for any purpose other than to demonstrate criminal propensity." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (quoting *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012)). The "inclusionary" approach, however, "'is not a carte blanche to admit prejudicial extrinsic act evidence [that] is offered to prove propensity' or otherwise to allow 'propensity evidence in sheep's clothing.'" *Id.* (quoting *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009)).

To admit Rule 404(b) evidence in a criminal case, the Government must "provide reasonable notice of any such evidence" and "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence." Fed. R. Evid. 404(b)(3). To fulfil the notice requirement, the Government must "provide not only the 'general nature' of the evidence but also . . . 'describ[e] the specific act that the evidence would tend to prove, and . . . explain the

relevance of the evidence for non-propensity purpose." *United States v. Patel*, No. 3:21-cr-220 (VAB), 2023 WL 2643815, at *26 (D. Conn. Mar. 27, 2023) (quoting Fed. R. Evid. 404 Committee Notes (2020 Amendment)).

In any event, Federal Rule of Evidence 403 requires the Court to exclude evidence "if its probative value is substantially outweighed by the danger of one of more of the following: unfair prejudice, confusing the issues, or misleading the jury, undue delay, wasting of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Mr. Stanley argues that any evidence of alleged membership in the "West Hell" gang should be precluded from admission because it is not "inextricably intertwined" to the charged offense and even if such evidence were admissible under Rule 404(b) to show "motive," it is inadmissible under Rule 403. Stanley MIL at 8–10.

The Government argues that evidence of "Scott's leadership of West Hell, and Stanley's high-ranking role as Scott's number two" is admissible to show the "close relationship" between Mr. Scott and Mr. Stanley and supports the Government's theory of why Mr. Stanley would assist Mr. Scott in the charged murder. Opp. MIL at 2.

The Court disagrees, in part.

Under the Second Circuit's "inclusionary approach," some evidence suggesting gang involvement can be admitted to demonstrate a "criminal relationship" between two individuals involved in a crime. *United States v. Felder*, 993 F.3d 57, 78 (2d Cir. 2021); *see United States v. Christopher*, No. 23-6169-cr (L), 23-6204-cr (Con), 2024 WL 5135382, at *2 (2d Cir. Dec. 17, 2024) (summary order) (upholding the admission of "limited evidence regarding the Defendants' alleged gang affiliation" as "probative of the Defendants' motive, intent, and opportunity to commit the crimes . . . as well as their relationship as coconspirators"). For the specific evidence

proposed by the Government, however, the probative value is outweighed by substantial prejudice, making it inadmissible under Rule 403.

The Government seeks to introduce witnesses who are "expected to testify that the defendants were both leaders of the West Hell gang and that [Mr.] Stanley was [Mr.] Scott's second-in-command." MIL in Opp. at 15. The specifics of the West Hell gang and alleged ranking of the Defendants is substantially prejudicial in comparison to the probative value of establishing the "closeness" of the Defendants' relationship. Testimony that Mr. Stanley was allegedly a leader in a criminal enterprise has a significant potential to lead the jury to form opinions on Mr. Stanley's propensity for violence or criminal activity that could unfairly influence the verdict. *See Old Chief*, 519 U.S. at 180 ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

Indeed, in cases where evidence relating to gang involvement is allowed to show a relationship between defendants, courts are often careful to limit unnecessary prejudice. For example, in *United States v. Felder*, the Second Circuit affirmed the admission of a photograph "depicting the men in gang colors and making gang signs" as evidence of the relationship and mutual trust between the defendants. 993 F.3d at 78. The Second Circuit noted that despite allowing the photograph into evidence, the district court "was careful to exclude from trial any evidence of [the defendant's] criminal participation with his co-conspirators in the 'YGz' street gang." *Id.* And the Second Circuit expressed doubt that the photograph even led to a conclusion of gang involvement, noting that the clothing and hand gestures in the picture would not "readily be understood as gang signs by the average person" sitting on the jury. *Id.* In contrast to the evidence in *Felder*, the Government's expected testimony not only clearly asserts the

Defendants' alleged involvement in the "West Hell" gang, but also describes them as leaders of that gang.

Furthermore, in the cases cited by the Government where more substantial evidence of gang affiliation was admitted, the charged crimes were directly related to the activities of the gang. *See, e.g.*, *Christopher*, 2024 WL 5135382, at *2 (evidence of gang affiliation was relevant to show motive when shooting involved "rival gang members"); *United States v. Ramsey*, No. 20-860, 20-877, 2021 WL 5022640, at *1, 4 (2d Cir. Oct. 29, 2021) (evidence of gang activity admitted to show "Pagett's motivation for removing Johnson" when "Johnson had been cooperating against the gang"); *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (evidence of prior bad acts taken by defendants was admitted when those acts "were in connection with, and led to, the murder-for-hire conspiracy"). Here, the charged crime is not alleged to have been directly connected to the gang activity.

The Court is thus wary of admitting highly prejudicial testimony on Mr. Scott's and Mr. Stanley's alleged leadership in the "West Hell" gang, when less prejudicial evidence on their relationship could be offered with similar probative value. The Court does not foreclose the possibility, however, of the admission of other evidence to show the relationship between Mr. Scott and Mr. Stanley that may suggest gang affiliation in a less prejudicial manner. The admission of any such evidence, though, would be better assessed in the factual context of the trial. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context." (internal quotation marks omitted)).

Accordingly, Mr. Stanley's motion *in limine* to preclude evidence of gang affiliation will be denied without prejudice to renewal at trial.

### 13.  Mr. Stanley's Prior Federal Conviction and Current Life Sentence

Rule 404(b) prohibits the admission of crimes, wrongdoings, or other acts to "prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b)(1). Under Rule 609, however, evidence of a criminal conviction can be used in specific cases to impeach a witness. *See* Fed R. Evid. 609(a) ("The following rules apply to attacking a witness's character for truthfulness by evidence of criminal conviction . . . ."). Crimes "punishable by death or by imprisonment of more than one year" can be admitted subject to Rule 403. *Id.* 609(a)(1)(B) ("[A] crime that . . . was punishable by death or by imprisonment of more than one year . . . must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to the at defendant[.]"). All convictions, including those for misdemeanors, can be admitted if the crime involves a "dishonest act or false statement[.]" *Id.* 609(a)(2).

To admit evidence of a past conviction not related to a dishonest act, a court must balance the probative value against the prejudicial effect by considering "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Stephen v. Hanley*, No. 03- CV-6226 (KAM) (LB), 2009 WL 1471180, at *4 (E.D.N.Y. May 21, 2009) (citing *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)).

 Mr. Stanley argues that any evidence of his past conviction and current life sentence should not be admitted because they offer minimal probative value and would be prejudicial. MIL at 22.

The Government states that it has no intention of offering any evidence related to Mr. Stanley's conviction and current sentence in its case in chief, but should Mr. Stanley testify, it may seek to use the conviction for impeachment purposes under Rule 609.

Given the parties' current positions, and the absence of sufficient detail of any convictions sought to be introduced right now, the Court will consider the introduction of evidence of Mr. Stanley's conviction, if and when the issue arises during trial.

Accordingly, the motion *in limine* to preclude introduction of Mr. Stanley's felony conviction and current life sentence will be denied without prejudice to renewal at trial.

### 14. The Alleged Hearsay Evidence from T.W.

Rule 802 prohibits the introduction of hearsay. Fed. R. Evid. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court."). Under Rule 801(d)(2), however, an out of court statement offered against an opposing party that was "made by the party's coconspirator during and in furtherance of the conspiracy" is considered admissible non-hearsay. *Id.* 801(d)(2)(E). The "conspiracy" under Rule 801(d)(2)(E) "need not be identical to any conspiracy that is specifically charged in the indictment." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). But, "there must be some independent corroborating evidence of the defendant's participation in the conspiracy," beyond the statement itself. *Id.* (quoting *United States v. Tellier*, 83 F.3d 578. 580 (2d Cir. 1996)).

Mr. Stanley renews his motion seeking to preclude the Government from introducing hearsay evidence through the testimony of T.W. MIL at 23. In his original motion, Mr. Stanley argued that any testimony from T.W. that implicated Mr. Stanley, who did not speak to T.W. directly, is inadmissible hearsay. Stanley March MIL at 12–13. Specifically, Mr. Stanley argued

that any statement from T.W. involving Mr. Stanley would have been heard from Mr. Scott or

Frank Chaney, another witness, and that there is insufficient corroborating evidence to say there

was a "conspiracy" with Mr. Scott or Mr. Chaney to meet the requirements of Rule 801(d)(2)(E).

*Id.*

The Government argues that it does not intend to illicit any hearsay testimony from T.W.

regarding statements from Mr. Chaney or Mr. Scott. Opp. MIL at 18.

Given that the Government does not intent to introduce such evidence against Mr.

Stanley, the Court will deny this motion as moot.

Accordingly, the motion *in limine* to preclude statements from T.W. as inadmissible

hearsay will be denied as moot.

### 15.  The Evidence Regarding the Deaths of Mr. Perry and Mr. Antoine

Mr. Stanley argues that evidence related to the killing of Mr. Perry and Mr. Antoine—

allegedly "retaliatory killings"—should be precluded. MIL at 23.

The Government argues that it does not intent to introduce evidence that Mr. Stanley (or

Mr. Scott) were involved with those murders. Opp. MIL at 19. The Government does state,

however, that it intends to introduce the fact that Mr. Perry and Mr. Antoine are deceased

because Mr. Perry and Mr. Antoine were both eyewitnesses to critical events surrounding Mr.

Velez's death, and "the jury will naturally wonder where [they] are." *Id.* The Government notes

that "The Government is sensitive to connections that jurors may make on their own between

Perry's and Antoine's deaths, and the Velez homicide," but that it has, "no intention of

suggesting to the jury that these other deaths are connected to [Mr.] Stanley."  *Id.* The

Government also "anticipate[s] calling a witness who is incarcerated for the killing of [Mr.

Antoine]. This witness killed [Mr.] Antoine because he believes that Antoine [] killed his

brother, Perry." *Id.* The Government assures the Court that it will not elicit testimony from this witness that Mr. Stanley was involved in either witness' death, arguing there is no need to grant this motion.

The Court agrees, in part.

To the extent that the Government wishes to introduce the basic fact that Mr. Perry and Mr. Antoine have passed since the murder of Mr. Velez, the Court will determine the admissibility of such evidence in the context of the trial.

Accordingly, Mr. Stanley's motion *in limine* to preclude evidence related to the death of Mr. Perry will be denied, without prejudice to renewal at trial.

## IV.    CONCLUSION

For the reasons explained above, Mr. Stanley's motion for production is **DENIED**. Mr. Stanley's motions *in limine* are **GRANTED in part** and **DENIED in part**.

Mr. Stanley's motion *in limine* to preclude one 911 call is **DENIED** as moot.

Mr. Stanley's motion *in limine* to preclude certain photographs in GX 6 is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude certain crime scene and autopsy photos from GX 4 and GX 5 is **DENIED**, without prejudice to renewal at trial.

Mr. Stanely's motion *in limine* to preclude Lt. Bowsza from testifying about the directional pattern of blood on Mr. Velez's face is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude Dr. Evangelista from using certain language to describe Mr. Velez's injuries is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to exclude certain portions of GX 13 is **DENIED** as moot.

Mr. Stanley's motion to exclude certain photographs from GX 9 is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude certain testimony from Special Agent James is **GRANTED in part** as to testimony about a "cluster" or "link" of unsolved homicides and **DENIED in part**, without prejudice to renewal at trial, as to testimony without a proper foundation.

Mr. Stanley's motion *in limine* regarding the Taco Bell surveillance videos pending consultation is **DENIED** without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude Y.C. from testifying as to the contents of any calls is **GRANTED in** part, as to the contents of calls with Mr. Scott, and **DENIED in part**, without prejudice to renewal at trial, as to the contents of calls with Mr. Velez.

Mr. Stanley's motion *in limine* to preclude T.W. from testifying as to his presence as the Stowe Village Mini Mart is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude evidence of connections between the firearm used to kill Mr. Velez and firearm used in other shootings is **DENIED** as moot.

Mr. Stanley's motion *in limine* to preclude evidence of gang affiliation is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude introduction of Mr. Stanley's felony conviction and current life sentence is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude statements from T.W. as inadmissible hearsay is **DENIED** as moot.

Mr. Stanley's motion *in limine* to preclude evidence related to the death of Mr. Perry and Mr. Antoine is **DENIED**, without prejudice to renewal at trial.

**SO ORDERED** at New Haven, Connecticut, this 30th day of July, 2025.

                                       \_\_ /s/ Victor A. Bolden _____

                                         Victor A. Bolden

                                         United States District Judge